1  Marc J. Randazza, Esq. SBN 269535
   Randazza Legal Group
2  302 Washington Street, Suite 321
   San Diego, CA 92103
3  619-866-5975
   619-866-5976 fax
4  mjr@randazza.com

5  Attorney for Plaintiff
   LIBERTY MEDIA HOLDINGS, LLC
6

7

8              UNITED STATES DISTRICT COURT

9     SOUTHERN DISTRICT OF CALIFORNIA, SAN DIEGO DIVISION

10                                       )
   LIBERTY MEDIA HOLDINGS, LLC           )   Case No. 10-CV-1809-WQH-BLM
11 A California Corporation               )
                                          )   **FIRST AMENDED COMPLAINT FOR**
12         Plaintiff,                      )   **DAMAGES AND INJUNCTIVE RELIEF**
                                          )
13         vs.                            )   **1) CYBERPIRACY –**
                                          )   **15 U.S.C. § 1125(d);**
14 JAMES MARCH, individually; PERRY       )   **2) TRADEMARK INFRINGEMENT**
   SJOGREN, individually; DI S.A, a foreign )  **(UNFAIR COMPETITION AND FALSE**
15 corporation; RYOICHI WATANABE, an      )   **DESIGNATION OF ORIGIN) –**
   individual; MARK BURKE, an individual; )   **15 U.S.C. § 1125(a);**
16 JASON PHILLIPS, an individual; DAVID    )   **3)WILLFUL TRADEMARK**
   SMITH, an individual; ADRUSH MEDIA,  a )   **INFRINGEMENT –**
17 foreign corporation; NAMEVIEW, INC. a  )   **15 U.S.C. § 1114(1)**
   foreign corporation; MYCLICKTO.COM, a  )
18 California corporation; DIRECT PRIVACY ID )
   826C9; and DOES 1-500                  )
19                                         )
           Defendants.                     )
20 _____ )

21

22

23        Plaintiff, Liberty Media Holdings, LLC, a California Corporation (hereinafter "Liberty" or

24 "Plaintiff") files this First Amended Complaint against multiple Defendants for violations of

25 Liberty's intellectual property rights, namely Liberty's trademarks, which are being infringed upon

26 by multiple cybersquatters, and alleges as follows:

27                  I.       **PERMISSIBLE AMENDMENT**

28        1.       The Fed. R. Civ. P. Rule 15(a)(A) permits a plaintiff one amendment of an original

   pleading as a matter of course before a plaintiff has been served with a responsive pleading.

                                          1

2.      Plaintiff hereby exercises its permissible amendment.   Plaintiff has discovered additional Defendants and hereby adds Defendants Ryoichi Watanabe, Mark Burke, Jason Phillips, and David Smith to the Action.

3.      Additionally, Plaintiff hereby voluntarily dismisses Corbinfisheraw.com, Corbinfisherraw.com, Domains By Proxy, Above.com, Privacyprotect.org, Whoisprotector, Inc., and Whois Privacy Protection Services, Inc. from the Action.

## II.      INTRODUCTION

4.      The Plaintiff is the victim of a widespread campaign by individual and corporate "cybersquatters" – individuals who register and/or use domain names that are confusingly similar to the trademarks, registered or otherwise, of their targets.  They do so to profit either from selling the domain names on the domain name after-market, using the domain names to earn click-through advertising fees, or merely to divert a certain percentage of traffic, otherwise destined to arrive at the Plaintiff's website, to other websites.   The Defendants in this action have all targeted Liberty's trademark CORBIN FISHER®, and are diverting traffic from Liberty's website to their own websites or to other websites.

5.      This action seeks injunctive relief and damages against these multiple Defendants for their willful infringement of the Plaintiff's niche-famous trademarks.   The Plaintiff seeks injunctive relief to transfer ownership of the infringing domain names to the Plaintiff's control, and the Plaintiff seeks to impose the maximum statutory damages award of $100,000 per infringing domain name upon each Defendant for each domain registered and/or used, as provided for in 15 U.S.C. § 1125(d), otherwise known as the Anti-Cybersquatting Consumer Protection Act (15 U.S.C. § 1125(d) (hereinafter, "ACPA").

6.      Furthermore, given the Defendants' clear willful infringement, the Plaintiff asks this Court to determine that this is an "exceptional case," warranting the award of the Plaintiff's attorney fees.

## III.      JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202.

8.      This Court has personal jurisdiction over the Defendants, who have engaged in business activities in and directed to this district, and have committed a tortious act within this district.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claims pled herein occurred in this district.

10.      The Defendants have all targeted their conduct toward a known forum resident LLC and have done so with the knowledge that the harm from their conduct would be felt in this jurisdiction.  Thus they are properly subject to jurisdiction in California and the California long arm statute.  Cal. Code Civ. P. § 410.10.

11.      Some of the Defendants are foreign citizens over whom jurisdiction is proper pursuant to Fed. R. Civ. P. 4 (k)(2).

**IV.      THE PARTIES**

12.       Plaintiff Liberty is a California limited liability company.

13.      Liberty operates a network of websites under the CORBIN FISHER mark, including CorbinFisher.com, which provides services of interest to the adult entertainment community.

**THE DEFENDANTS**

14.      There are two classes of defendants in this case, A) actual domain registration holders, and B) domain registration identity masking services.  Plaintiff seeks to amend the complaint as domain registration identity masking services Domains by Proxy and Privacyprotect.org have unmasked the actual underlying registration holders.  As such Plaintiff dismisses Domains by Proxy and Privacyprotect.org without prejudice.

**A.  Actual Domain Registration Holder Defendants**

**1. James March**
**(www.wwwcorbinfisher.com)**

15.      James March ("MARCH") is believed to be a resident of Sacramento, California.  See Exhibit 1.

16.     On information and belief, "James March" may be an alias or a false name, in which case the Plaintiff will seek leave to amend this complaint to reflect the true responsible party's name after the discovery process reveals his true identity.

17.     MARCH registered and/or used the following domain names with a bad faith intent to profit from such registration or use:

   a.     wwwcorbinfisher.com (See Exhibit 1).

18.     MARCH has registered this domain name with ENOM, INC.  See Exhibit 2.

**2. Perry Sjogren**
**(www.corbinfisherporn.com)**

19.     Perry Sjogren  ("SJOGREN") is believed to be a resident of Seattle, Washington. Exhibit 3.

20.     Perry Sjogren has waived service in this action.  Doc. 5.

21.     SJOGREN registered and/or used the following domain names with a bad faith intent to profit from such registration or use:

   a.     corbinfisherporn.com (Exhibit 3).

22.     SJOGREN registered this domain name with GODADDY.COM, INC.  Exhibit 4.

**3. Defendant DI S.A**
**(www.corbinfiher.com and www.corbinfiisher.com)**

23.     DI S.A. is a corporation doing business in Luxembourg.  Exhibit 5.

24.     At this time, DI S.A. is the registered name holder of the following domain names, all of which were registered or used with a bad faith intent to profit from such registration or use:

   a.     Corbinfiher.com (Exhibit 5);

   b.     Corbinfiisher.com (Exhibit 6).

25.     DI S.A. has registered the domain names with Eurodns S.A. (Exhibit 7)

26.     Eurodns S.A. principal place of business is in Luxembourg.

**4.  RYOICHI WATANABE**
**(www.corbin-fisher.info)**

27.     Ryoichi Watanabe is believed to be a resident of Tokyo, Japan.  Exhibit 8.

28.     On information and belief, "Ryoichi Watanabe" may be an alias or a false name, in which case the Plaintiff will seek to amend this complaint to reflect the true responsible party's name after the discovery process reveals his true identity.

29.      Watanabe registered and/or used the following domain name with a bad faith intent to profit from such registration or use:

     a.      corbin-fisher.info.  Exhibit 8.

30.     The domain is registered with Godaddy.com.

### 5.  MARK BURKE
**([www.corbinfisherwidget.com](www.corbinfisherwidget.com) and [www.corbinfisherwidgets.com](www.corbinfisherwidgets.com))**

31.     Mark Burke is believed to be a resident of Renton, Washington.  Exhibit 9.

32.     Burke registered and used the following domain names with a bad faith intent to profit from such registration or use:

     a.      corbinfisherwidget.com (Exhibit 9),

     b.      corbinfisherwidgets.com (Exhibit 10).

33.     The domain is registered with Godaddy.com.

### 6.  JASON PHILLIPS
**([www.ilovecorbinfisher.com](www.ilovecorbinfisher.com))**

34.     Jason Phillips is believed to be a resident of Plymouth, UK.  Exhibit 11.

35.     On information and belief, "Jason Phillips" may be an alias or a false name, in which case the Plaintiff will seek to amend this complaint to reflect the true responsible party's name after the discovery process reveals his true identity.

36.     Phillips registered and/or used the following domain name with a bad faith intent to profit from such registration or use:

     a.      ilovecorbinfisher.com.  Exhibit 11.

37.     The domain is registered with Directi Internet Solutions Pvt., Ltd. d/b/a/ Publicdomainregistry.com.

1

2

**7.  DAVID SMITH**
**(www.cornbinfisher.com, www.corbimfisher.com,**
**www.corbinfisheer.com, www.corbinfissher.com)**

3        38.      David Smith is, on information and belief, a foreign individual.

4        39.      At this time, David Smith is the registered name holder of the following domain

5   names, all of which were registered or used with a bad faith intent to profit from such registration

6   or use (Exhibit 12):

7                 a.      cornbinfisher.com,

8                 b.      corbimfisher.com;

9                 c.      corbinfisheer.com

10                d.      corbinfissher.com

11       40.      David Smith has registered the domain names with Above.com PTY, Ltd.

12       **B. Domain Registration Identity Masking Service Defendants**

13       41.      The following Defendants are domain registration identity masking services.  This

14  kind of service registers domain names for third parties who wish to keep their identity a secret.

15  These services have legitimate uses, but are often (as in the instant case) used by persons involved

16  in unlawful activity, and who seek to evade detection and liability for their actions.

17       42.      These Defendants act as the Registered Name Holder of domains for their

18  customers, and then license back use of those domains to their customers.

19       43.      These Defendants, by virtue of a contract entered into with their respective

20  customers to provide anonymity services, inserted the name of their own anonymity service as the

21  listed registrant for the infringing domains, to mask the true identity of who actually had control

22  over the infringing domain(s).

23       44.      The ICANN Registrar Accreditation Agreement (hereafter "ICANN Agreement") is

24  an agreement between ICANN (a body authorized by the United States Government to regulate

25  Internet registrations in this Country) and registrars of Internet domains.  ICANN is the Internet

26  Corporation for Assigned Names and Numbers, and is the governing body that grants accreditation

27  to domain name registrars including these Identity Masking Service Defendants.

28

First Amended Complaint

45. Even though these Defendants will likely claim that they are not the "true" Registered Name Holder of the infringing domains, the ICANN Agreement provides that in certain circumstances, parties in their position can be held responsible for the actions of underlying registrants.

46. Paragraph 3.7.7.3 of the ICANN Agreement, "[a]ny Registered Name Holder who intends to license use of a domain name to a third party is nonetheless the Registered Name Holder of record" and is liable for all "harm caused by wrongful use of the Registered Name, unless it promptly discloses the identity of the licensee to a party providing the Registered Name Holder reasonable evidence of actionable harm."

47. Even if the Identity Masking Service Defendants are not the actual owners in interest of the infringing domain names, they are proper Defendants in this case as contributorily liable for their customers' illegal cybersquatting activities.  See *Solid Host v. Name Cheap*, 2009 U.S. DIST LEXIS 63423 (C.D. Cal. 2009).

48. Each of these services was provided with the initial complaint, and failed to identify the underlying registrant.

**1. Privacy Service Defendant Adrush Media Holland B.V.**
**(www.corbin-fisher.com)**

49. Adrush Media Holland B.V. (hereinafter Adrush) is a corporation doing business at P/a Doweg 27 B Ijmuiden, CA 1976 NL, under the name "Adrush."  Exhibit 13.

50. At this time, Adrush is the registered name holder of the following domain names, all of which were registered or used with a bad faith intent to profit from such registration or use (Exhibit 13):

    a.    Corbin-fisher.com

51. Adrush has registered the name with Directnic, Ltd.  (Exhibit 14)

**2. Defendant Nameview, Inc., Whois Identity Shield**
**(www.corbingfisher.com)**

52. Nameview, Inc. is a Canada corporation doing business at 142-757 W. Hastings St. Suite 777 Vancouver, BC Canada V6C 1A1.  Exhibit 15.

53.     At this time, Nameview, Inc. is the registered name holder of the following domain names, all of which were registered or used with a bad faith intent to profit from such registration or use:

     a.     Corbingfisher.com (Exhibit 15).

54.     Nameview, Inc. has registered the name with Nameview, Inc.  Exhibit 16.

### 3.  Privacy Service MyClickTo.com
#### (www.corbinfishermovies.com)

55.     MyClickTo.com is a California corporation doing business at 7985 Santa Monica Blvd Suite 15, West Hollywood, CA 90046 under the name "MyClickTo.com."  Exhibit 17.

56.     At this time, MyClickTo.com is the registered name holder of the following domain names, all of which were registered or used with a bad faith intent to profit from such registration or use:

     b.     Corbinfishermovies.com  (Exhibit 17).

57.     MyClickTo.com has registered the name with Godaddy.com, Inc.  Exhibit 18.

### 4. Privacy Service Defendant Direct Privacy ID 826c9
#### (www.corbinfisherpasswords.com)

58.     Direct Privacy ID 826c9 is doing business at PO Box 12068 George Town, Grand Cayman KY1-1010, KY under the name "Direct Privacy ID 826c9."  Exhibit 19.

59.     At this time, Direct Privacy ID 826c9 is the registered name holder of the following domain names, all of which were registered or used with a bad faith intent to profit from such registration or use:

     c.     Corbinfisherpasswords.com (Exhibit 19).

60.     Direct Privacy ID 826c9 has registered the name with Directnic, Ltd.  Exhibit 20.

### V.     BACKGROUND

### A.     Liberty's Valuable Trademark Rights

61.     The Plaintiff has been using the CORBIN FISHER® mark in international commerce in connection with the adult entertainment industry since as early as January 2004.

62.     The Plaintiff owns overwhelming trademark rights to the mark CORBIN FISHER established by six years of continuous and widespread use on the Internet, millions of daily visitors

First Amended Complaint

1   to the CORBIN FISHER network of websites, as well as near ubiquitous recognition in the relevant

2   channels of trade.

3        63.    The Plaintiff has been using "CORBIN FISHER" as a source identifier for its

4   services since October 2003. Exhibit 21.

5        64.    On August 11, 2005, Excelsior Media LLP (Liberty's predecessor in interest)

6   applied to register the CORBIN FISHER mark, and on January 9, 2007, the United States Patent

7   and Trademark Office issued Registration No. 3,196,073. See Exhibit 22.

8        65.    The CORBIN FISHER mark (in connection with the adult entertainment industry)

9   can only identify the Plaintiff, and Internet users who navigate their browsers to the Infringing

10  Domains would be misled to believe that the Infringing Domains are in some way connected to and

11  affiliated with the Plaintiff.

12                **B.    Liberty's Internet Presence**

13       66.    Liberty maintains a substantial presence on the Internet. Via the Internet, Liberty

14  advertises its products and services, transacts business with its customers, offers its customers

15  access to many of its services, and provides product support, among other things.

16       67.    In order to provide customers with easy access to its online products and services,

17  Liberty has registered a number of Internet domain names. Many of these domain names

18  correspond to Liberty's trademarks and service marks. Examples of such domain names are

19  <corbinfisher.com> and <corbinpays.com >.

20       68.    Each of these domain names, as well as others registered to Liberty, resolves to an

21  Liberty-created website that provides Liberty's customers with information related to Liberty's

22  products and services. These websites generate business for Liberty and allow Liberty to maintain

23  relationships with its customers.

24                **C.    Defendants' Wrongful Conduct**

25       69.    Defendants registered the Infringing Domain Names.

26       70.    Defendants are and/or were the user of the Infringing Domain Names.

27       71.    Defendants registered and used the Infringing Domain Names to capitalize on the

28  popularity of Liberty's online services offered in connection with Liberty's mark.

72.     The Defendants registered Infringing Domain Names with a bad faith intent to profit from the Plaintiff's trademark.

73.     Defendants chose the Infringing Domain Names and commenced use of the CORBIN FISHER mark in connection with its websites solely for the purpose of improperly trading upon Liberty's trademark rights.

74.     The Infringing Domain Names incorporate the entirety of the Plaintiff's CORBIN FISHER trademark, consist of intentional misspellings of Liberty's mark, or consist of the Plaintiff's mark with a generic name attached thereto.

75.     The Infringing Domain Names are identical or confusingly similar to Liberty's mark. The Infringing Domain Names do not resolve to websites owned or endorsed by Liberty. Rather, upon information and belief, many of the Infringing Domain Names resolve to websites that are controlled by the Defendants.

76.     Plaintiff is informed and believes, and on that basis alleges that the Defendants were aware of Liberty's rights in the CORBIN FISHER mark and willfully infringed upon it by registering the Infringing Domain Names.

77.     Plaintiff is informed and believes, and on that basis alleges that Defendants were aware of Liberty's rights in the CORBIN FISHER mark and willfully infringed upon those rights by using the Infringing Domain Names in a bad faith attempt to capitalize on the CORBIN FISHER mark.

78.     Defendants provide no *bona fide* services at the Infringing Domain Names, but rather send visitors into rabbit holes of links that eventually lead to other commercial websites which compete with the Plaintiff. Defendants then receive payment for each of these clicks. Defendants' Websites contain numerous advertisements for and/or hyperlinks to a variety of products and services.

79.     On information and belief, Defendants receive financial consideration for this misdirected traffic.

80.     On information and belief, through Defendants' aforementioned acts, Defendants intended to misdirect valuable Internet traffic that otherwise would have gone to the CORBIN FISHER Websites.

81.     On information and belief, through Defendants' aforementioned acts, Defendants willfully created a likelihood of confusion between the Plaintiff's services and Defendants' services offered at the Infringing Domain Names.

82.     When a person looking for Liberty website lands on one of Defendants' Websites, that person may click on one of the advertisements or hyperlinks on the site either because the person finds it easier to click advertisements or hyperlinks than to continue searching for the Liberty site, or because the person mistakenly believes that Liberty has authorized or endorsed the advertisements or hyperlinks. In either case, the person has been diverted from the Liberty website he or she was seeking to visit, and Liberty has lost the opportunity to interact with that person.

83.     Liberty has not consented to Defendants' use of the CORBIN FISHER tradename, service mark, and/or domain name, nor has Liberty sponsored, endorsed, nor approved of the services offered and promoted by Defendants their respective Websites.

84.     Defendants are not affiliated with, or sponsored by, Liberty and have not been authorized by Plaintiff to use Liberty's mark. Defendants have not now nor ever been authorized by Plaintiff to use or register any name or mark that includes the Liberty mark.

85.     Defendants' services consist of nothing more than misleading webpages containing links to other webpages where third party goods and services are located.

86.     Defendants use the Infringing Domain Names in a scheme to profit from the Liberty Marks in bad faith.

87.     Upon information and belief, Defendants receive payment when Internet users click on one or more links or advertisements on the websites located at the Infringing Domain Names. Defendants receive these payments from one or more advertisers, affiliate programs, and/or search engines.

88.     Defendants have done nothing to market or promote the CORBIN FISHER mark independently of the infringing services offered at Defendants' Websites.

89.     On information and belief, Defendants adopted and used the CORBIN FISHER mark and the Infringing Domain Names for the purpose of misleading and confusing the public about its association with Liberty, and trading on the goodwill, reputation, and fame of the CORBIN FISHER mark.

90.     Defendants' registration and use of the Infringing Domain Names is to primarily capitalize on the goodwill associated with Liberty's mark for profit.

91.     Defendants' infringing conduct and refusal to respect Liberty's trademark rights indicates that Defendants deliberately and willfully selected and are using a mark and a domain name similar to Liberty's famous trademark to mislead and confuse consumers into believing that Defendants' Websites are provided by, sponsored by, or approved of by CORBIN FISHER. Defendants are trading on Liberty's reputation and goodwill, and its enormous investment in the promotion of the CORBIN FISHER service mark, thus diluting the distinctive quality of the famous CORBIN FISHER mark.

92.     Defendants registered the Infringing Domain Names willfully and with bad faith intent to profit from Liberty's mark.

93.     On information and belief, Defendants knew about CORBIN FISHER, the CORBIN FISHER mark, and CORBIN FISHER's business at the time it adopted the CORBIN FISHER tradename, service mark, and the Infringing Domain Names, or was willfully blind to Liberty's trademark rights.

94.     Defendants' first commercial use of the CORBIN FISHER mark and the Infringing Domain Names occurred after Liberty's first use of the CORBIN FISHER mark in connection with its services, and years after CORBIN FISHER's common law rights had been established.

95.     Defendants' first commercial use of the CORBIN FISHER mark and the Infringing Domain Names occurred after Liberty's CORBIN FISHER mark had become famous.

96.     Defendants' promotion of its services under the Infringing Domain Names is directed at consumers of Liberty's services and is conducted through the same channels of trade as are used by Liberty to promote its services under the CORBIN FISHER mark.

97.     Defendants' use of the Infringing Domain Names, and Defendants' actions described herein are certain or likely to cause confusion, deception, and/or mistake as to: (a) the source or origin of Defendants' services; and (b) whether Liberty sponsors, endorses, or approves of Defendants or its services or is otherwise affiliated with Defendants.

98.     Defendants' use of the Infringing Domain Names and Defendants' actions described herein dilute the distinctive quality of Liberty's famous CORBIN FISHER mark.

99.     Defendants' use of the Infringing Domain Names and its actions described herein have been, and continue to be deliberate, willful, and with disregard of Liberty's rights.

100.    Defendants continuing conduct constitutes an ongoing risk that the public will be confused as to the source or origin of the services provided at the Infringing Domain Names.

101.    Liberty has sustained, and will continue to sustain, irreparable injury as a result of Defendants' conduct.  This injury is not compensable solely by the award of monetary damages. Unless Defendants are immediately restrained and enjoined from engaging in their infringing and diluting conduct, Liberty will continue to suffer irreparable injury.

### FIRST CLAIM FOR RELIEF

### Cyberpiracy – 15 U.S.C. § 1125(d)

102.     Plaintiff re-alleges and incorporates by reference, as if verbatim, each and every paragraph.

103.    This is an action under the ACPA, 15 U.S.C. § 1125(d).

104.    Each Defendant's Infringing Domain Names are confusingly similar to and/or dilutive of Liberty's famous CORBIN FISHER mark.

105.    Each Defendant has registered, has used, and/or is using the Infringing Domain Names with the bad faith intent to profit from Liberty's famous CORBIN FISHER mark.

106.    The Defendants' actions constitute a violation of the Lanham Act and the Anti-cybersquatting Consumer Protection act as codified at 15 U.S.C. § 1125(d).

107.    Liberty has been, is now, and will continue to be irreparably harmed by the Defendants' aforementioned acts, and unless enjoined by the Court, the Defendants' unauthorized

1   use of the Infringing Domain Names will continue, and there is no adequate remedy at law for the

2   harm caused by the acts alleged herein.

3        108.   The actions alleged herein to have been undertaken by the Defendants were actions

4   that the Defendants caused to occur, were actions that the Defendants authorized, controlled,

5   directed, or had the ability to authorize, control or direct, and/or were actions in which the

6   Defendants assisted, participated or otherwise encouraged, and are actions for which the

7   Defendants is liable.

8        109.   Pursuant to 15 U.S.C. § 1125(d)(1)(c), this Court is empowered to order the

9   Registrar to transfer the domain names to a prevailing Plaintiff.

10        WHEREFORE, Liberty prays that on the First Claim for Relief, the Court issue an order:

11        a.    granting a preliminary and permanent injunction transferring all Infringing Domain

12             Names and/or any other URLs that incorporate the Plaintiff's trademarks to the

13             Plaintiff;

14        b.    directing each Defendant to relinquish all rights in the Infringing Domain Names

15             and to transfer the Infringing Domain Names to the Plaintiff; and directing each

16             Defendant to relinquish all rights in any other Internet domain names that contain

17             the Plaintiff's marks or any other confusingly similar variation thereof;

18        c.    directing the relevant registrar of each of the Infringing Domain Names to transfer

19             the Infringing Domain Names to the Plaintiff without delay;

20        d.    awarding Plaintiff statutory damages of $100,000 per infringing domain name

21             registered by, used by, or trafficked by each Defendant under the Anti-

22             cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d);

23        e.    awarding the Plaintiff its reasonable attorneys' fees, costs of Court and

24             disbursements incurred herein in view of Defendants' intentional and willful

25             infringement, pursuant to 15 U.S.C. § 1117;

26        f.    granting the Plaintiff all other relief to which it is entitled and such other or

27             additional relief as is just and proper.

28

1

## SECOND CLAIM FOR RELIEF

2

## Trademark Infringement, Unfair Competition, and False Designation of Origin

3

## 15 U.S.C. § 1125(a)

4      110.    Plaintiff re-alleges and incorporates by reference, as if verbatim, each and every

5    paragraph.

6      111.    This is an action for trademark infringement, pursuant to 15 U.S.C. § 1125(a).

7      112.    Liberty alleges and believes that Defendants chose the Infringing Domain Names,

8    adopted the CORBIN FISHER mark, and took the other actions alleged above, in order to cause

9    confusion or mistake, to deceive the public as to the origin, sponsorship, or approval of the services

10   of Defendants, and/or to deliberately pass off Defendants' services as those of Liberty.

11     113.    Defendants' conduct constitutes trademark infringement and unfair competition in

12   violation of 15 U.S.C. § 1125(a).

13     114.    Unless enjoined, Defendants will continue their infringing conduct.

14     115.    As a direct and proximate result of Defendants' infringing conduct, Liberty has

15   suffered and will continue to suffer irreparable injury to its business reputation and goodwill for

16   which no adequate remedy exists at law, and Liberty has lost sales, visitors and profits in an

17   amount not yet fully ascertained.

18     116.    Defendants' conduct complained of herein is malicious, fraudulent, knowing,

19   willful, and deliberate, entitling Liberty to an accounting of Defendants profits, increased damages,

20   and an award of it's attorneys' fees and costs incurred in prosecuting this action under 15 U.S.C. §

21   1117.

22     WHEREFORE, Liberty prays that on the Second Claim for Relief, the Court issue an order:

23     a.      granting a preliminary and permanent injunction restraining Defendants and any and

24             all individuals or entities acting in concert or participation with them, from using in

25             connection with any product or service or the manufacture, importation, exportation,

26             sale, offering for sale, distribution, advertising, promotion, labeling, or packaging of

27             any product or service, or for using for any commercial purpose whatsoever: (1) the

28             designation CORBIN FISHER; (2) the Infringing Domain Names and/or any other

URLs that incorporate the Plaintiff's trademarks; (3) any other designation that is likely to cause dilution of the distinctiveness of the Plaintiff's trademarks or injury to the Plaintiff's business reputation; or (4) any other name, mark, or term likely to cause mistake in the mind of the public or to deceive the public into the belief that Defendants' businesses and/or products and/or services are in any way associated with or related to Liberty or its products and/or services; (5) engaging in any non-privileged activities that are calculated to, or reasonably likely to, interfere with the business relationships, existing or prospective, between Liberty and its customers.

b.  directing Defendants to relinquish all rights in the Infringing Domain Names and to transfer the Infringing Domain Names to Plaintiff, Liberty; and directing Defendants to relinquish all rights in any other Internet domain names that contain the term "CORBIN FISHER" or any other confusingly similar variation thereof;

c.  directing Defendants to account to the Plaintiff for any and all gains, profits, and advantages derived by Defendants from the sale of products or services through the use of the infringing mark or the Infringing Domain Names;

d.  awarding Liberty a monetary judgment against Defendants for the maximum damages allowable pursuant to 15 U.S.C. § 1114(1), 15 U.S.C. § 1117, 15 U.S.C. § 1125(a);

e.  trebling the amount of such award on account of Defendants' willful, intentional, and bad faith conduct pursuant to 15 U.S.C. § 1117;

f.  awarding the Plaintiff its reasonable attorneys' fees, costs of Court and disbursements incurred herein in view of Defendants' intentional and willful infringement, pursuant to 15 U.S.C. § 1117;

g.  granting the Plaintiff all other relief to which it is entitled and such other or additional relief as is just and proper.

16
First Amended Complaint

**THIRD CLAIM FOR RELIEF**

**Willful Trademark Infringement**

117.    Plaintiff re-alleges and incorporates by reference, as if verbatim, each and every paragraph.

118.    This is an action for declaratory and injunctive relief and damages pursuant to 15 U.S.C. § 1114(1).

119.    In the course of its conduct of business, Liberty's CORBIN FISHER mark has been continuously used in association with the LMH Websites.  During this period, the Plaintiff's CORBIN FISHER mark and the Plaintiff's reputation has continuously grown throughout the United States and worldwide as a source of origin for services marketed under the CORBIN FISHER trademark.

120.    Liberty's mark has become associated in the minds of consumers with one of the most reputable adult-entertainment websites on the Internet, and Plaintiff enjoys the benefit of the ever-increasing fame and goodwill associated with the CORBIN FISHER mark, as a result of its efforts and industry.

121.    Defendants' aforementioned acts constitute willful infringement of the Plaintiff's CORBIN FISHER mark in violation of the Lanham Act, Section 32(1), 15 U.S.C. § 1114(1).

122.    Consumers are likely to be confused by Defendants' use and display of the Plaintiff's CORBIN FISHER mark as a component of Defendant's Infringing URLs.

123.    Consumers who navigate to the Infringing Domain Names are likely to believe that they are navigating to a site owned or endorsed by Liberty, thereby falsely designating the origin of the goods and services offered via the infringing site.

124.    Consumers, once so misled, are likely to purchase goods and services at the Infringing Domain Names, believing they are Plaintiff's or somehow affiliated with the Plaintiff, thereby resulting in a loss of sales to Liberty, blurring of the source of origin of products and services, and diluting the value of Plaintiff's CORBIN FISHER mark.

125.    The use by Defendants of Plaintiff's CORBIN FISHER mark in connection with the Infringing Domain Names is likely to cause confusion, mistake, and deception in the relevant

1 marketplace as to the source of origin of online services delivered to the end user who accesses the

2 Infringing Domain Names, and will continue to do so unless enjoined by this Court.

3       126.    By such wrongful acts Defendants has caused, and unless restrained by the Court,

4 will continue to cause serious irreparable injury and damage to the Plaintiff and to the goodwill

5 associated with Plaintiff's CORBIN FISHER mark, including diversion of customers, lost sales,

6 and lost profits, blurring, tarnishment and dilution of Plaintiff's CORBIN FISHER mark.

7       WHEREFORE, Plaintiff prays that on the Third Claim for Relief, the Court issue an order:

8     d.       granting a preliminary and permanent injunction restraining Defendants and any

9         and all individuals or entities acting in concert or participation with Defendants,

10         from using in connection with any product or service or the manufacture,

11         importation, exportation, sale, offering for sale, distribution, advertising, promotion,

12         labeling, or packaging of any product or service, or for using for any commercial

13         purpose whatsoever: (1) the designation CORBIN FISHER; (2) the Infringing

14         Domain Names and/or any other URLs that incorporate the Plaintiff's CORBIN

15         FISHER mark; (3) any other designation that is likely to cause dilution of the

16         distinctiveness of the CORBIN FISHER mark or injury to the Plaintiff's business

17         reputation; or (4) any other name, mark, or term likely to cause mistake in the mind

18         of the public or to deceive the public into the belief that Defendants' business and/or

19         products and/or services are in any way associated with or related to Plaintiff or its

20         products and/or services; (5) engaging in any non-privileged activities that are

21         calculated to, or reasonably likely to, interfere with the business relationships,

22         existing or prospective, between the Plaintiff and its customers.

23     e.       directing Defendants to relinquish all rights in the Infringing Domain Names and

24         to transfer these Internet domain names to the Plaintiff, LMH; and directing

25         Defendants to relinquish all rights in any other Internet domain names that contain

26         the term "CORBIN FISHER" or any other confusingly similar variation thereof;

27

28

1    f.    directing Defendants to account to the Plaintiff for any and all gains, profits, and

2    advantages derived by Defendants from the sale of products or services through the

3    use of the CORBIN FISHER mark or the Infringing Domain Names;

4    g.    awarding Plaintiff a monetary judgment against Defendants for the maximum

5    damages allowable pursuant to 15 U.S.C. § 1114(1), 15 U.S.C. § 1117, 15 U.S.C. §

6    1125(a), and 15 U.S.C. § 1125(d);

7    h.    trebling the amount of such award on account of Defendants' willful,

8    intentional, and bad faith conduct pursuant to 15 U.S.C. § 1117;

9    i.    awarding the Plaintiff its reasonable attorneys' fees, costs of Court and

10    disbursements incurred herein in view of Defendant's intentional and willful

11    infringement, pursuant to 15 U.S.C. § 1117;

12    j.    granting the Plaintiff all other relief to which it is entitled and such other or

13    additional relief as is just and proper.

14

15    Dated: October 18, 2010                    Respectfully submitted,

16
                                                s/ Marc Randazza
17                                              Marc J. Randazza, SBN 269535
                                                Randazza Legal Group
18                                              302 Washington Street, Suite 321
                                                San Diego, CA 92103
19                                              619-866-5975
                                                619-866-5976 (fax)
20                                              mjr@randazza.com

21

22

23

24

25

26

27

28