Marc J. Randazza, Esq. SBN 269535
Randazza Legal Group
10620 Southern Highlands Pkwy. 110-454
Las Vegas, NV 89141
888-667-1113
305-437-7662 fax
mjr@randazza.com

Attorney for Plaintiff
LIBERTY MEDIA HOLDINGS, LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA, SAN DIEGO DIVISION

| | |
|---|---|
| LIBERTY MEDIA HOLDINGS, LLC<br>A California Corporation<br><br>　　　　　Plaintiff,<br><br>　　　vs.<br><br>JAMES MARCH, individually; RYOICHI WATANABE, an individual; JASON PHILLIPS, an individual; DAVID SMITH, an individual; ADRUSH MEDIA, a foreign corporation; NAMEVIEW, INC. a foreign corporation; MYCLICKTO.COM, a California corporation; and DOES 1-500<br><br>　　　　　Defendants. | Case No. 10-CV-1809-WQH-BLM<br><br>**POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANTS RYOICHI WATANABE, JASON PHILLIPS, DAVID SMITH, AND ADRUSH MEDIA** |

　　　　NOW COMES Plaintiff Liberty Media Holdings, LLC (Liberty), and respectfully requests that default judgment be entered against Defendants Ryoichi Watanabe, Jason Phillips, David Smith, Adrush Media, and Nameview, Inc. (jointly referred to as "Defendants") pursuant to Fed. R. Civ. P. 55(b)(2).

## FACTUAL BACKGROUND

　　　1.　　Defendants have committed trademark infringement, unfair competition and false designation of origin under 15 U.S.C. §§ 1125(d), 1125(a), 1114(1).

　　　2.　　On August 31, 2010, Plaintiff Liberty Media Holdings filed this action to seek damages and injunctive relief against multiple defendants, including Nameview. ECF No. 1.

3. On October 18, 2011, Plaintiff filed its First Amended Complaint adding defendants Ryoichi Watanabe, Jason Phillips, David Smith, and Adrush Media. ECF No. 6.

4. On November 19, 2010, Plaintiff served Defendant Nameview at its self-listed address in Canada with the Summons and First Amended Complaint. ECF No. 29.

5. On January 21, 2011, Plaintiff served Defendants Ryoichi Watanabe, Jason Phillips, David Smith, and Adrush Media with the Summons and First Amended Complaint via email pursuant to the Court's Order (No. 22). ECF No. 25, 26, 27, and 28.

6. Defendants failed to file or serve an answer or response to the, nor did they seek or obtain an extension of time within which to respond.

7. Liberty requested that the Clerk of this Court enter Defendants' default, and the Clerk entered Default against Defendants on March 28, 2011. ECF No. 41.

8. Pursuant to Federal Rules of Civil Procedure 55(b) and 54(b), Liberty requests that this Court enter default judgment against Defendants in connection with Plaintiff's claims as alleged in the Complaint.

9. While it is Plaintiff's right to seek a Default Judgment and damages for all counts and claims in the Complaint, the Plaintiff seeks Default damages only under the First Claim for Relief under the Anti-cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d). In the event that default judgment is granted, the Plaintiff will withdraw the other claims for relief stated in the Complaint without prejudice to re-file if there is an effort to have the default judgment set aside.

## Points and Authorities

10. Under Fed. R. Civ. P. 8(b)(6), failure to deny factual allegations constitute an admission of their veracity. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); *Joe Hand Promotions Inc. v. Meola*, 2011 U.S. Dist. LEXIS 57184 at *5 (N.D. Cal. Apr. 22, 2011).

11. In this case, the defendants having failed to respond to the complaint, all of the factual allegations raised by the Plaintiff are hereby resolved in the Plaintiff's favor.

12. Under Fed. R. Civ. P. 55(b)(2), termination of a case before hearing the merits is allowed when a defendant fails to defend the action. *SEC v. Wright,* 261 Fed.Appx. 259, 263 (11th Cir. 2008) (district court did not abuse its discretion in entering default judgment where defendant failed to present any defense regarding allegations in the complaint).

13. Liberty will be prejudiced if default judgment is not entered. Liberty served process on Defendants pursuant to the Fed. R. Civ. P. and pursuant to this court's order. The Defendants have not cared to appear in this action. If Plaintiff's Application for Default Judgment is not granted, it "will likely be without recourse for recovery." *PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp.2d 1172, 1177 (C.D. Cal. 2002).

14. Liberty has satisfied the procedural requirements for default judgment. The Complaint is legally and factually sufficient. Defendants have had significant time to respond to the allegations in the Complaint but have failed to do so. "Defendant's failure to answer [the] Complaint makes a decision on the merits impractical, if not impossible." *PepsiCo. Inc.*, 238 F. Supp. 2d at 1177.

15. Accordingly, Defendants are liable for violations of the Lanham Act, 15 U.S.C. § 1125(d).

16. Further, this Court may enter default judgment based on declarations or affidavits and documentary evidence, without holding an evidentiary hearing. Fed. R. Civ. P. 55(b)(2); *S.E.C. v. Smyth,* 420 F.3d 1225 (11th Cir. 2005) (finding that an evidentiary hearing is not a per se requirement of the rule authorizing entry of default judgment by a district court); *Action S.A. v. Marc Rich & Co.,* 951 F.2d 504, 508 (2d Cir. 1991) (noting Rule 55(b)(2) "does not require the district judge to conduct a hearing") (citations omitted).

17. Fed. R. Civ. P. 55(b) permits a court to enter judgment by default following entry of default by the clerk of the court. Fed. R. Civ. P. 55(b); see also *Phillip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003). The effect of a default judgment is that the defendant "... admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir.1987). Furthermore, as it is here, "[i]f proximate cause is properly alleged in the complaint, it is admitted upon default." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Reality Corp.*, 973 F.2d 155, 159 (2d Cir. 1992). In cases such as this, "[i]njury is established, and [Liberty] need prove only that the compensation sought related to the damages that naturally flow from the injuries pled." *Philip Morris U.S.A., Inc. v. Castworld Prod., Inc.* 219 F.R.D. 494, 498 (C.D. Cal. 2003).

18. Fed. R. Civ. P. 55(a) and 55(b)2 provide for the entry of a default judgment by the Court when the party against whom default is sought is provided with at least 3 days notice prior to a hearing on any such application.

19. Notice was provided concurrently with the filing and service of these papers. Additionally, notice of Plaintiff's intent to seek default judgment was provided to Defendants on March 1, 2011. See Exh. 1 submitted herewith. The required notice does not have to be in any particular form; rather, the major consideration is that the party is made aware that default judgment may be entered against him. See *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105 (6th Cir. 1995).

20. The effect of the entry of a default is that all of the factual allegations in the complaint are taken as true, except for the amount of unspecified damages. *S.E.C. v. Smyth,* 420 F.3d 1225 (11th Cir. 2005). Defendant "... admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir.1987).

21. The Defendants have, to date, not participated in this case at all, and have failed to file an Answer to the Complaint despite being given notice as required by the Federal Rules of Civil Procedure.

22. Additionally, the Defendants function as large-scale cybersquatters—precisely the kind of person and entity that the ACPA was intended to restrain—and failing that, to punish.

## **REMEDIES SOUGHT**

23. The Plaintiff's request for attorney's fees and costs is proper under the Lanham Act, 15 U.S.C. § 1117(a). Section 1117 of the Lanham Act provides that when a violation of registered trademark rights occurs, and when there is a violation of Section 1125(a) or (d) or a willful violation occurs under Section 1125(c), the plaintiff shall be entitled to recover the defendant's profits, damages sustained by the plaintiff, and the costs of the action. See 15 U.S.C. § 1117(a).

24. In the event that this Court sees fit to enter a default judgment, the Plaintiff hereby waives any awards of profits or compensatory damages in this case, and seeks only statutory damages as provided for by the Anti-cybersquatting Consumer Protection Act, 15 U.S.C. §

1125(d)(1); 15 U.S.C. § 1117(d), as well as reimbursement of fees and costs, 15 U.S.C. § 1117(a).

**A.    Forfeiture of the Domain Names.**

25.    Forfeiture of the offending domain names and costs of suit are expressly provided for under the Anti-cybersquatting Consumer Protection Act and the remedial portions of the Lanham Act.  See, e.g., *Agri-Supply Co. Inc. v. Agrisupply.com*, 457 F.Supp. 2d 660, 664 (E.D. Va. 2006).

26.    The Anti-cybersquatting Consumer Protection Act provides for "a court order for the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." § 1125(d)(2)(D)(i).  Pursuant to this legal authority, the Plaintiff requests that the Court order the concerned registrars (Godaddy.com, Directi Internet Solutions Pvt., Ltd. d/b/a Publicdomainregistry.com, Above.com, Directnic, and Moniker Privacy Services), the concerned domain name registry (and operator of the ".com" top level domain), Verisign, Inc., and the Defendants to take any and all actions necessary to transfer ownership of the domains at issue (listed below) to the ownership of Plaintiff:

    a.    Corbin-fisher.info,
    b.    Ilovecorbinfisher.com,
    c.    Cornbinfisher.com
    d.    Corbimfisher.com
    e.    Corbinfisheer.com
    f.    Corbinfissher.com
    g.    Corbin-fisher.com,
    h.    Corbingfisher.com.

**B.    Damages.**

27.    "In a case involving cybersquatting under Section 43(d)(1) [15 U.S.C. § 1125(d)(1)] the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $ 1,000 and not more than $100,000 per domain name, as the court considers just."  15 U.S.C. § 1117.  The Plaintiff hereby exercises this right to elect statutory damages.

28. The court's authority to award statutory damages for cybersquatting serves to provide reparations to the wronged party, and to discourage wrongful conduct. See e.g, *E & J Gallo Winery v. Spider Webs Limited*, 286 F.3d 270, 278 (5th Cir. 2002). The purpose of the ACPA's statutory damages provision resembles that of the Copyright Act, which was intended not only to compensate the rights owner, but also to discourage wrongful conduct. *Id*. (citing *F.W. Woolworth Co. v. Contemporary Arts, Inc*., 344 U.S. 228 (1952)).

29. The Defendants employed the Plaintiff's famous marks to promote competing businesses. See First Amended Complaint (ECF No. 6) ¶¶ 4, 27-29, 32, 35-36, 39, 50, 53, 69-108. Defendants continued to employ the marks after receiving actual notice of the infringing nature of their conduct, and their lack of authority to do so, and continue to do so even today. Plaintiff seeks a statutory damage award of $100,000, which is appropriate in this case.

30. A request for a maximum statutory damage award of $100,000 is reasonable, as such awards are regularly granted in cases such as this one. See, e.g., *Biocryst Pharms., Inc. v. Namecheap.com*, No. CV 05-7615 JFW (C.D. Cal. Nov. 21, 2006 (default judgment of $100,000 per domain name and $71,373.58 in attorneys fees); *Medline Indus. v. Medline Prods*., 2004 U.S. Dist. LEXIS 12741 (N.D. Ill. 2004) (default judgment of $100,000 per domain name and $35,570 in fees); *Elec. Boutique Holdings Corp. v. Zuccarini*, 56 U.S.P.Q.2d 1705, 1710 n. 11, 1713-14 (E.D. Pa.2000) (awarding $100,000 statutory damages per domain name with $27,487 attorneys' fees); *Mirage Resorts, Inc. v. Cybercom Prods*., 228 F.Supp.2d 1141, 1142-43 (D.Nev.2002) (statutory damages on default of $100,000, plus $13,763 attorneys' fees, and $1,000 for corrective advertising); *Graduate Mgmt. Admission Council v. Raju*, 267 F.Supp.2d 505, 512-13 (E.D.Va.2003) (awarding $100,000 per domain name). Other awards have been lower. See *Choice Hotels Int'l, Inc. v. Wright*, No. CV-03-3785-RGK (C.D. Cal. May 11, 2004) (granting summary judgment and awarding plaintiff $75,000 per domain name for a total of $525,000); 355 B.R. 192 (Bankr. C.D. Cal. 2006) (excepting award of ACPA statutory damages from discharge in defendant's bankruptcy); *Pinehurst, Inc. v. Wick*, 256 F.Supp.2d 424, 433 (M.D. N.C. 2003) (awarding $50,000 per domain name plus attorneys' fees and costs based on defendant's willful and deliberate conduct); *A1 Mortg. Corp. v. A1 Mortg. and Fin. Servs., LLC*, 82 U.S.P.Q.2d 1440 (W.D. Pa. 2006) (granting $50,000 per domain name at bench trial).

31. While the amount of damages is not pegged to any particular conduct, measurement of the Defendants' bad faith is judged by the factors listed in 15 U.S.C. § 1125(d)(1)(B).

32. To determine whether a person has bad faith intent under the Anti-cybersquatting Consumer Protection Act, a court may consider the following factors:

I. The trademark or other intellectual property rights of the person, if any, in the domain name;

II. The extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

III. The person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

IV. The person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

V. The person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

VI. The person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

VII. The person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

VIII. The person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

IX. The extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of this section.

33. The allegations in the First Amended Complaint, which are deemed admitted, establish the following factors:

34. The ownership of the trademark CORBIN FISHER® on both a national and international level, is proven by Exhibit 22 to the First Amended Complaint (ECF No. 6-23). See 15 U.S.C. § 1125(d)(1)(b)(i)(I).

35. Under factor II, the extent to which the domain name consists of the legal name of the person, or a name that is used to commonly identify that person, Defendants have introduced no evidence, nor could they likely introduce any credible evidence, that they are known by the name "Corbin Fisher." See 15 U.S.C. § 1125(d)(1)(b)(i)(II).

36. Under factor III, the Defendants have not had any prior use of the domain name in connection with a bona fide offering of any goods or services. See 15 U.S.C. § 1125(d)(1)(b)(i)(III).

37. Under factor IV, the Defendants have not made any non-commercial or fair use of the mark in a site accessible under the domain name. See 15 U.S.C. § 1125(d)(1)(b)(i)(IV).

38. Under factor V, it is clear that the Defendants' intent was to divert customers from the mark owner's online location to another website, either for commercial gain or with the intent to harm the Plaintiff. See 15 U.S.C. § 1125(d)(1)(b)(i)(V).

39. Under factor VI, the Defendants have not, to the best of the Plaintiff's knowledge, offered to transfer, or otherwise assign the domain name, even after commencement of this lawsuit. See 15 U.S.C. § 1125(d)(1)(b)(i)(VI).

40. Under factor VII, it is likely that the Defendants have not provided accurate physical contact information when applying for the registration of the domain name. See Declaration of Marc Randazza In Support of Motion for Alternate Service (ECF No. 15-2) ¶ 3.

41. Under factor VIII, the Defendants have a history of registering domain names which they knew, or should know, are identical or confusingly similar to the marks of others that were distinctive at the time of registration of such domain names. See 15 U.S.C. § 1125(d)(1)(b)(i)(VIII).

   a. Ryoichi Watanabe owns "about 16 other domains." See First Amended Complaint (FAC) Exh. 8 (ECF No. 6-9).
   b. Mark Burke owns "about 163 other domains," including 2 of which are the subject of this action. See FAC Exh. 9 (ECF No. 6-10).
   c. Jason Phillips owns "about 296 other domains." See FAC Exh. 11 (ECF no. 6-12).
   d. It is unknown how many other domains David Smith has registered, but at he has registered 4 domains which are the subject of this action. FAC ¶ 39.
   e. Adrush Media owns "about 764 other domains." FAC Exh. 13 (ECF No. 6-14).
   f. Nameview acts as an identity shield, and is listed as the registrant for a large number of domains.

42. Under factor IV, the mark CORBIN FISHER ® has been shown to be famous, both through evidence provided to the Court, and through common knowledge of which the Court should take judicial notice. See 15 U.S.C. § 1125(d)(1)(b)(i)(VI).

### C. Attorneys Fees and Costs

43. Plaintiff requests that the Court award court costs and attorneys fees to the Plaintiff. An award of attorney's fees requires an additional analysis to determine whether the present case is "exceptional" under the Lanham Act. A defendant is liable for fees under the Lanham Act where the infringement is "malicious, fraudulent, deliberate and willful manner" See *Burger King v. Pilgrim's Pride Corp.,* 15 F.3d 166, 168 (11th Cir.1994); *Playboy Enters. Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1276 (9th Cir. 1982). This case fits squarely within the definition of "exceptional" as contemplated by the Act and relevant case law.

44. The Defendants, since before this suit was filed, and since the inception of this suit, have refused to cooperate with Plaintiff's requests for a transfer of the domains at issue and have refused to participate in this action.

### 1. The Plaintiff is clearly entitled to an award of court costs.

45. The Lanham Act expressly provides for an award of court costs in Anti-cybersquatting Consumer Protection Act actions. See 15 U.S.C. § 1125(d)(3) (providing for additional civil remedies); 15 U.S.C. § 1117(a) (providing the additional civil penalties available under the Lanham Act and the Anti-cybersquatting Consumer Protection Act.)

46. Accordingly, by operation of law and outside the discretion of the Court, the domain name must be transferred to the Plaintiff, and costs must be awarded to the Plaintiff.

### 2. The Plaintiff is entitled to an award of attorney's fees

47. The Lanham Act calls for an award of attorney's fees in "exceptional cases." See 15 U.S.C. § 1117(a). A defendant is liable for fees under the Lanham Act where the "infringement is willful, deliberate, knowing or malicious." *Earthquake Sound Corp.*, 352 F.3d at 1216; *Playboy Enters. Inc.*, 692 F.2d at 1276. See also, *Babbit Elecs. v. Dynascan Corp.*, 38 F.3d 1161, 1183 (11th Cir. 1994) (exceptional case found when defendant's actions were blatant and intentional). The statute itself does not define what might be considered to be an exceptional case, but courts have found that this standard is met when the defendant's conduct is willful, fraudulent, malicious, or deliberate. *Earthquake Sound Corp.*, 352 F.3d at 1216; *Playboy Enters. Inc.*, 692 F.2d at 1276.

48. Courts have found that a case may become "exceptional" not only when there is willful infringement (as exists in this case), but when the defendant exhibits "willful defiance and protraction of the judicial processes attempting to stop the illegalities." 15 U.S.C. § 1117(e). Courts have also deemed cases "exceptional," and warranting an award of attorneys' fees when the defendant "disregards the proceedings and does not appear." *Johnson v. Connolly*, 2007 U.S. Dist. LEXIS 31721 (N.D. Cal. Apr. 18, 2007) (citing *Taylor Made Golf Co, Inc v Carsten Sports Ltd*, 175 FRD 658, 663 (S.D. Cal. 1997)).

49. The court should therefore find that this case is exceptional due to the nature of Defendants' infringement and their failure to appear in this case. To date, the Defendants have

1 refused to participate in meaningful settlement discussions and have refused to file an answer or
2 other responsive pleading.

3       50.    Furthermore, the Defendants have not only committed these acts of infringement
4 in violation of the Plaintiff's rights, but seems to have engineered enterprises whose sole purpose
5 was to run roughshod over the rights of others as well. The Defendants' systematic program of
6 trademark infringement supports a finding of bad faith and deliberate and willful infringement on
7 the part of the Defendant – which in turn supports the Plaintiffs' entitlement to an award of
8 attorneys fees. See § 1117(a); *Shields v. Zuccarini*, 2000 U.S. Dist. LEXIS 15223 (July 18,
9 2000) (plaintiff's motion for statutory damages and attorney's fees granted), aff'd, 254 F.3d 476
10 (3d Cir. 2001); *SNA, Inc. v. Array*, 173 F. Supp. 2d 347, 350 (E.D. Pa. 2001) (willful
11 infringement justifies fee award); *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 849 (E.D.
12 Mich. 2006) (fees awarded in default cybersquatting judgment).

### CONCLUSION

14 **WHEREFORE,** Plaintiff requests that this Court enter a Default Judgment against
15 Defendant Domain Administrator, awarding the following relief:

16       A. Granting a preliminary and permanent injunction restraining Defendants and any and
17 all individuals or entities acting in concert or participation with Defendants, from using in
18 connection with any product or service or the manufacture, importation, exportation, sale,
19 offering for sale, distribution, advertising, promotion, labeling, or packaging of any product or
20 service, or for using for any commercial purpose whatsoever: (1) the designation **CORBIN**
21 **FISHER®** (2) the Internet domain name www.corbinfisher.com and/or any other URLs that
22 incorporate the Plaintiffs' distinctive marks; (3) any other designation that is likely to cause
23 dilution of the distinctiveness of the **CORBIN FISHER®** mark or injury to Plaintiff's business
24 reputation; or (4) any other name, mark or term likely to cause mistake in the mind of the public
25 or to deceive the public into the belief that Defendants' business and/or products and/or services
26 are in any way associated with or related to Plaintiff or Plaintiff's products and/or services; (5)
27 engaging in any non-privileged activities that are calculated to, or reasonably likely to, interfere
28 with the business relationships, existing or prospective, between the Plaintiff and its customers.

B.   Directing Defendants and any relevant domain name registrars to turn the following domain names over to the Plaintiff:

   1.   Corbin-fisher.info

   2.   Ilovecorbinfisher.com

   3.   Cornbinfisher.com

   4.   Corbimfisher.com

   5.   Corbinfisheer.com

   6.   Corbinfissher.com

   7.   Corbin-fisher.com

   8.   Corbingfisher.com,

And to relinquish all rights in any other Internet domain names that contain the term "Corbin Fisher" or any other confusingly similar variation thereof;

C.   Directing Defendant to provide a list of all domain names that they own, possess, control, or for which they serve as the Registered Name Holder so that Plaintiff and any other interested parties may inspect this list for other trademark infringements.

D.   Directing the registrars of the domain name at issue, to immediately transfer the domain names to Plaintiff Liberty, and directing Defendant to cooperate in any such effort;

E.   Failing such action, directing Verisign, Inc., the concerned domain name registry, to immediately transfer the domain names to Plaintiff, and directing Defendants to cooperate in any such effort;

F.   Directing Verisign, and all other domain name registrars to additionally freeze the entire domain name portfolio held by the Defendants, as such portfolios likely are the only recoverable asset that Defendants have.

G.   Awarding Plaintiff statutory damages under the Anti-cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) in the amount of $100,000 per infringing domain name; specifically and ordering the turnover of the following domains to the Plaintiff:

    i.   $100,000 against as to Ryoichi Watanabe for corbin-fisher.info;

    ii.   $100,000 as to Jason Phillips for ilovecorbinfisher.com;

    iii.   $400,000 as to David Smith for cornbinfisher.com, corbimfisher.com, corbinfisheer.com, and corbinfissher.com;

    iv.   $100,000 as to Adrush Media for Corbin-fisher.com;

    v.   $100,000 as to Nameview for Corbingfisher.com.

H. Maximizing the amount of such award on account of Defendant's willful, intentional and bad faith conduct;

I. Awarding Plaintiff reasonable attorneys' fees, costs of Court and disbursements incurred herein in view of Defendants' intentional and willful infringement, pursuant to 15 U.S.C. § 1117(a) and (d); 15 U.S.C. § 1125 (d)(3).

J. Awarding Plaintiff such other and further relief as the Court may deem just and proper.

Dated: August 5, 2011                         Respectfully submitted,

                                                  s/ Marc Randazza
Marc J. Randazza, SBN 269535
Randazza Legal Group
10620 Southern Highlands Pkwy. 110-454
Las Vegas, NV 89141
888-667-1113, 305-437-7662 (fax)
mjr@randazza.com

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed electronically using this Court's CM/ECF system on August 5, 2011, which sent notice to Perry Sjogren's attorney of record. A copy has been sent via email to Defendants Mark Burke, Ryoichi Watanabe, Jason Phillips, David Smith, and Adrush Media. A copy has been mailed to Nameview, Inc. Plaintiff is unable to locate the remaining parties and thus is unable to serve them.

Dated: August 5, 2011                         Respectfully submitted,

                                              s/ Marc Randazza
                                              Marc J. Randazza, SBN 269535
                                              Randazza Legal Group
                                              10620 Southern Highlands Pkwy. 110-454
                                              Las Vegas, NV 89141
                                              888-667-1113, 305-437-7662 (fax)
                                              mjr@randazza.com